IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

RONALD E. HARRIS and
ROBERT L. SUMMERISE,

        Defendants.
_____/

NO.  CR.S-06-0230 DAD

<u>ORDER RE DEFENDANTS' MOTION</u>
<u>TO SUPPRESS EVIDENCE</u>

**INTRODUCTION**

On September 13, 2006, the court held an evidentiary hearing on the motion to suppress evidence filed in the above-entitled action on behalf of defendants Ronald Harris and Robert Summerise.[1] Rebekah

---

[1] Counsel on behalf of defendant Harris initially filed the motion to suppress evidence on July 18, 2006, which was followed by the filing of an amended notice of motion on July 18, 2006, and a second amended notice of motion on July 25, 2006. Counsel on behalf of defendant Summerise joined in the motion on July 31, 2006. On August 7, 2006, after the granting of an extension of time, counsel for the government filed an opposition to the motion. Defendants' reply with exhibits and a supporting declaration was filed on August

R. Gibson, Certified Law Student, appeared on behalf of the United States, attorney Kresta Daly appeared on behalf of defendant Harris, John Buchholz, Certified Law Student, of the Federal Defender's Office appeared for defendant Summerise.  Following the evidentiary hearing, the parties were directed to file supplemental cross-briefing on issues raised by the evidence presented at the hearing.  Those supplemental briefs were filed on September 22, 2006.  The motion was taken under submission.

**FACTS**

Defendants Harris and Summerise are charged in this misdemeanor action with possession of marijuana in violation of 21 U.S.C. § 844(a) on January 17, 2006 at Travis Air Force Base.[2]  The charges against the defendants stem from the stop of their vehicle, which defendant Summerise was driving with defendant Harris occupying the front passenger seat, by Department of Defense Officer Kirk Bryant in the area of the Hospital Gate entrance to Travis.  Upon stopping the vehicle, Officer Bryant saw a "black and mild cigar case" on the vehicle's center console.  He identified this item as something often used to mask the odor of marijuana.  Accordingly, he asked the

---

11, 2006.  On August 15, 2006, the date originally scheduled for the trial confirmation hearing, counsel for the government filed a response to the defendants' reply brief as well as supporting declarations from Department of Defense Officers Bryant and Shannon. At the hearing that same day, counsel for the government requested an evidentiary hearing.  After hearing argument, the court granted the request and set the evidentiary hearing for September 13, 2006.

[2] Defendant Summerise is also charged with possession of marijuana while driving in violation of California Vehicle Code § 23222(b).

2

occupants if they had marijuana in the car.  Summerise responded that there was a little in the car and Harris indicated he had some in his right front pocket.  The defendants were instructed to exit the car. Defendant Summerise handed the officer a small plastic baggie containing a green leafy and a half-smoked cigar, both of which tested positive for THC.  Defendant Harris was found to have three small baggies containing green leafy substances in his front pocket, one of which tested positive for THC.  The defendants were arrested, given Miranda warnings, gave sworn statements confessing to their possession of marijuana and were released from custody.  Beyond that, the facts surrounding this incident are substantially in dispute.

   The defendants moved to suppress all evidence seized, including their statements, on the grounds that the stopping of the vehicle by the officers was unjustified in that there was no reason to believe that the occupants had engaged in wrongdoing and defendant Summerise was looking for a tow yard, had taken a wrong turn and was attempting to turn around without entering the base.  Thus, they argued that the stop could not be justified as a checkpoint stop because the defendants were not attempting to enter the base. Instead, the vehicle could be stopped only if it was supported by probable cause or a reasonable articulable suspicion of unlawful activity, both of which were lacking here.

   In opposing the motion to suppress initially the government took the positions that: (1) contrary to defendants' assertions, the vehicle did not attempt to make a u-turn before approaching the Hospital Gate; (2) the stop of the vehicle at the gate entry

checkpoint was reasonable since Officer Bryant saw suspicious activity including the vehicle parking on the side of the entry road for a period of time, the vehicle making an illegal lane change as it approached the gate, the vehicle swerving from side to side and both defendants appearing nervous; and (3) in any event, the vehicle was already on the base before it reached the gate and could be justifiably stopped.  However, in declarations submitted just prior to the evidentiary hearing and at the hearing itself the government, in its own words "making every attempt to be forthright with the facts" presented two diametrically opposed versions of how the defendants' vehicle came to be stopped.

Officer Bryant declared and testified that he saw the defendants' vehicle parked along the Air Base Parkway fence line outside the Hospital Gate and after about three minutes pull out and drive toward the gate.  The vehicle crossed two lanes without signaling as it approached the gate.[3]  According to Officer Bryant, as it approached the gate the vehicle was moving very slowly and its tires turned slightly as if swerving but not attempting to make a u-turn.  When the vehicle got to Officer Bryant he asked the driver and the passenger for identification which the driver produced but the passenger could not.  Officer Bryant believed that both occupants appeared nervous.  He did not note any odor of marijuana coming from the vehicle.  However, because he found the route of the vehicle (first parked, then changing lanes and swerving slowly) to be

---

[3] The left lane the vehicle moved into was apparently the only lane by which visitors could enter the base.

4

suspicious and the occupants to be nervous he instructed the driver to pull over in the visitors' parking lot.

Department of Defense Officer Steve Shannon told quite a different story of how defendants' vehicle came to be stopped. Officer Shannon declared and testified that he was on duty in an unmarked car on the day in question. Officer Shannon testified that he saw the defendants' vehicle parked along the fence line on Air Base Parkway and that as he drove toward the Hospital Gate the vehicle pulled in front of him. He also testified that the car was filled with thick marijuana smoke and that he saw the occupants smoking a joint. Officer Shannon radioed ahead to the checkpoint station and told them to stop the defendants' vehicle. As he followed the car as it headed toward the gate he saw it start to attempt to turn into the u-turn area to exit the base but a number of officers on duty at the checkpoint came out and the vehicle was directed to pull forward and was stopped.[4]

Finally, Master Sergeant George Ponce testified that he was on duty on the day in question and was called to the Hospital Gate to handle the investigation of possible possession of a controlled substance. When he arrived the seized items were already on the roof of defendants' vehicle. He administered a Field Sobriety Test to defendant Summerise which he passed. Sergeant Ponce did not detect the odor of marijuana on either defendant.

/////

---

[4] Officer Shannon did not testify about any illegal lane change.

5

**ANALYSIS**

Contrary to the government's suggestion, the court finds that the testimony of the officers cannot be reconciled. The defense argues that because the testimony of Officers Shannon and Bryant was so inconsistent, the court should disregard it all and conclude that the government has failed to satisfy its burden of proof in justifying the warrantless vehicle stop. The court finds this argument unpersuasive as well.

Based upon all the evidence submitted, the court finds that other than pulling off to the side of the road on the section of road leading to the Hospital Gate, nothing about the defendants' conduct or driving was suspicious. In this regard, the court rejects Officer Shannon's testimony about seeing marijuana smoke and a joint, since it is entirely inconsistent with the testimony of Officer Bryant and Sergeant Ponce. However, the court finds that defendant Summerise did attempt to make a u-turn to leave the area before reaching the Hospital Gate. This finding is based upon Officer Shannon's testimony and is at least partially supported by Officer Bryant's testimony regarding the slight swerve he detected. The court also concludes that Officer Bryant waived the vehicle forward and then carried out the stop of the vehicle at the checkpoint area at the Hospital Gate.

Based upon these facts, the court concludes that the defendants' motion to suppress must be denied. It is undisputed that once the vehicle in which the defendants were riding turned onto the road leading to the Hospital Gate they were already on Travis Air Force Base, a military installation within the exclusive jurisdiction

of the United States. It is also undisputed that they found themselves in a short line of cars in front of the entry checkpoint at the Hospital Gate. Whether the defendants intended or wanted to be there is irrelevant to the determination of whether it was lawful for the officers to stop the vehicle and make inquiry of its occupants. Once the vehicle driven by defendant Summerise entered onto the military base property it could be stopped by military police for inspection without cause. United States v. Hawkins, 249 F.3d 867, 875 (9th Cir. 2001) ("The Government's interest in maintaining national security and promoting public safety on base roadways outweighed the brief and limited intrusion resulting from stopping Hawkins at the Peacekeeper gate. We hold, therefore, that the stop of Hawkins and his truck was reasonable under the Fourth Amendment."); see also United States v. Green, 293 F.3d 855, 861 (5th Cir.) ("The conduct of the military police in this case reaches no farther than those state license checkpoints that have passed constitutional muster in a number of circuits."), cert. denied 537 U.S. 966 (2002).[5]

---

[5] The fact that the defendants' vehicle was on the military base subjecting it to the minimally intrusive vehicle stop is dispositive of the pending motion. However, even if that were not the case, the defendants' vehicle would have properly been subjected to a vehicle stop. Officer Bryant had seen the vehicle pull to the side of the entry road and park, a fact that he viewed as suspicious. The vehicle also started to make a u-turn just before the guard shack in order to avoid passing through the checkpoint. These facts occurring on a military base would have supplied a reasonable suspicion justifying a brief vehicle stop for investigation such as occurred here. See United States v. Montero-Camargo, 208 F.3d 1122, 1137-38 (9th Cir.) ("[T]his Court has made it clear that a turnaround combined with other factors may be considered as part of a reasonable suspicion analysis.")(en banc), cert. denied 531 U.S. 889 (2000); United States v. Garcia-Barron, 116 F.3d 1305, 1307 (9th Cir. 1997) ("[a]pparent efforts to avoid checkpoints combined with other factors have

**CONCLUSION**

For the reasons set forth above:

1. The motion of defendants is DENIED; and

2. The matter is set for Trial Confirmation Hearing and Status Conference on February 13, 2007, at 9:00 a.m. in Courtroom No. 27.

IT IS SO ORDERED.

DATED: January 31, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.criminal/harris0230oahsuppress

---

generally been found to constitute 'reasonable suspicion'"); see also United States v. Smith, 396 F.3d 579, 585 (4th Cir.), cert. denied 544 U.S. 1122 (2005).